UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | 19-465-SDD-EWD |
| WILLIAMS OLEFINS, LLC | |

### **RULING**

Under consideration before the Court is the unopposed *Motion to Approve a Stipulation of Settlement* filed by Plaintiff, United States of America.[1] The Court must discern whether the proposed Settlement is fair, reasonable and adequate, is not the product of collusion between the parties, and serves the public interest. "This requires a determination that the proposal represents a reasonable factual and legal determination based on the facts of the record, whether established by evidence, affidavit, or stipulation.[2]"

Movant supports its *Motion* with affidavits.[3] The Court has carefully considered the *Memoranda* and affidavits offered in support of the *Motion to Approve Stipulation of Settlement*. The Court shall grant the *Motion*[4] and makes the following findings.

---

[1] Rec. Doc. 3.
[2] *United States v. City of Miami, Fla.*, 664 F.2d 435, 441 (5th Cir. 1981).
[3] The Court initially ordered an evidentiary hearing on the *Motion* but thereafter granted the United States *Motion* to supplement the record with affidavits, in lieu of live testimony. Rec. Docs. 11, 12, 13, 14.
[4] Rec. Doc. 3.

65936

**I.    BACKGROUND**

The underlying facts are concerning, and the procedural history is noteworthy. On July 17, 2019, the Government filed a *Complaint*[5] against Williams Olefin, LLC ("Williams")[6] alleging violations of the Clean Air Act and the Chemical Accident Prevention Provisions regulations.[7] The allegations of the *Complaint* arise out of a serious explosion and fire that erupted in the Propylene Production Unit at the Williams plant in Geismar, Louisiana on June 13, 2013. The *Complaint* alleges seven violations of Sections 112(r)(1) and 112(r)(7) of the Clean Air Act (CAA), 42 U.S.C. §§ 7412(r)(1), (r)(7), and certain provisions of the Chemical Accident Prevention Provisions at 40 C.F.R. Part 68.

**A.    Factual Allegations**

The plant explosion and ensuing fire destroyed two reboilers and severely damaged the propylene fractionator tower along with the piping systems transiting the Propylene Production Unit, which resulted in the release of thousands of pounds of extremely hazardous substances, including regulated flammable substances.[8] The

---

[5] Rec. Doc. 1.
[6] Now known as NOVA Chemicals Olefins LLC (NOVA).
[7] 42 USC § 7412 (r)(1),(7), 40 C.F.R. Part 68, respectively.
[8] The Government recounts the following details:
> On the morning of June 13, 2013, Plant operations personnel, including G. Scott Thrower (deceased), were troubleshooting to find out why the flow of quench water was slowing down in the Plant's Propylene Production Unit quench water circulation piping system. Sometime during this work, Mr. Thrower opened a valve that sent heated quench water into an offline reboiler. The reboiler had been offline for over two years and was therefore supposed to have been emptied of any hydrocarbons, which are flammable. Unbeknownst to Plant employees, however, sometime during the roughly two-year period before the Incident, the reboiler had become partially filled with a flammable hydrocarbon mixture – primarily liquid propane.
> The ultra-hot incoming quench water quickly boiled the hydrocarbon mixture, causing the vessel to rapidly over pressurize. Because the reboiler did not have its own, independent pressure relief device and because the reboiler had been isolated from its pressure relief system (which depended upon the reboiler being connected to another nearby unit), there was no exit path for the boiling hydrocarbons.
> The ensuing explosion destroyed the reboiler, a second, companion reboiler, and severely damaged the adjacent propylene fractionator. The damaged fractionator, in turn, lost containment of the propylene being processed within the fractionator. These materials

released substances, including propylene, ethylene, 1,3 butadiene, and propane, ignited, setting off a fire that burned for more than four hours.[9] The explosion killed two Williams employees; caused 167 injuries, some severe; resulted in road closures; and resulted in a shelter-in-place order affecting nearby residents for more than one-half day.[10]

### B. Procedural History

Before the Court is the Government's *Motion to Approve a Stipulation of Settlement* with Williams for the payment of a civil penalty in the amount of $750,000.[11] Notably, the proposed Settlement for which the Court's approval is now sought was filed on the same day as the *Complaint*. The Government represents that the proposed Settlement was "was negotiated by experienced counsel for each party at arms-length and in good faith" and "is fair, reasonable, adequate and consistent with the public health and environmental protection goals of the CAA."[12]

The Court ordered oral argument on the Government's *Motion to Approve a Stipulation of Settlement* to address the fairness, adequacy, and reasonableness of the proposed Settlement.[13] The parties filed a *Consent Motion to Continue*[14] the fairness

---

quickly ignited into a massive fireball engulfing the Propylene Production Unit and other nearby infrastructure. The fire continued to burn for about four hours, only subsiding after the propylene fractionator, and its associated process equipment and piping emptied their flammable contents

During the fire, extremely hazardous substances, including regulated flammable substances listed at 40 C.F.R. § 68.130 such as propylene, ethylene, 1,3 butadiene, and propane were released into the ambient air from the Plant. Investigators determined that the destroyed process equipment and piping systems released 23,089 pounds of propylene, 2,397 pounds of ethylene, thirty pounds of 1,3 butadiene and about 34,000 pounds of other flammable hydrocarbon VOCs (mostly propane) into the atmosphere.

Rec. Doc. 3-1, pp. 2–4 (internal citations omitted).
[9] Rec. Doc. 1, pp. 1–2, 62-68; Rec Doc 3-1.
[10] *Id.*
[11] Rec. Doc. 2, p. 4.
[12] Rec. Doc. 3-1, p. 8.
[13] Rec. Doc. 5.
[14] Rec. Doc. 6.

hearing and thereafter filed a *Supplemental Memorandum* and additional *Sworn Declarations*,[15] and the Court took the matter under advisement.

After careful consideration of the *Memoranda* and affidavits offered in support of the *Motion*, the Court again ordered "additional briefing, and evidentiary support if necessary, regarding the EPA's determination that the third, fifth, and sixth claims for relief in the *Complaint* are single-day violations."[16] The Government filed a *Second Supplemental Memorandum in Support of Unopposed Motion to Approve Stipulation of Settlement*,[17] and Williams filed a *Response* in support.[18]

The Court ordered additional briefing to address whether the proposed Settlement sought by the Government is fair, reasonable, adequate, and in the public interest. Of particular concern to the Court was the Government's treatment of three of the alleged violations as single-day violations which has the affect of greatly minimizing the statutory fine. "At the time of the Incident the statutory maximum was $37,500 per day of violation."[19]

In Count Three of its *Complaint*, the Government alleged that Williams specifically failed to establish written procedures, or adequate procedures, to prevent the release of extremely hazardous substances and yet proposed that this be treated as a single-day violation because the harm that arguably resulted was limited to the events on the day of the explosion.[20] In Count Five of its *Complaint*, the Government alleged that Williams

---

[15] Rec. Doc. 14.
[16] Rec. Doc. 18.
[17] Rec. Doc. 20.
[18] Rec. Doc. 25.
[19] Rec. Doc. 14-3, p. 5 Affidavit of Justin McDowell, Risk Management Program (RMP) Inspector and enforcement officer, assigned to the Air Enforcement Branch of the Enforcement and Compliance Assurance Division, EPA Region 6.
[20] Rec. Doc. 14, p. 15.

failed to establish written operating procedures for troubleshooting the quench water circulation system, and again the United States proposed that this be treated as a single-day violation.[21] Finally, in Count Six of its *Complaint*, the United States alleged that Williams failed to "ascertain" and "document" that its employee, who was killed in the explosion, had received and understood the training required to operate and troubleshoot the quench water system, again proposing that this be treated as a single-day violation.[22] In this Court's view, the proposed treatment of Counts Three, Five, and Six as single-day violations presented questions as to the fairness, reasonableness and adequateness of the Settlement, as well as the Settlement being in the public interest.

The United States concedes that "[t]hese types of violations, depending on circumstances of the given case, could be pursued as multi-day violations… [but] [f]or purposes of calculating a pre-filing settlement penalty in this matter, the United States determined, in the exercise of its discretion, to treat the violations upon which the claims are based as having occurred on only one day - the day of the explosion."[23] The United States further offered that "[t]he duration of these violations. . .was determined using the case-specific factual evidence and *for purposes of determining a penalty acceptable for pre-filing settlement negotiations*. . ."[24] In other words, the treatment of the violations alleged in Counts Three, Five, and Six as single-day violations was reached in order to derive the intended or desired penalty amount. The United States further concedes that it "could have exercised its discretion differently" but rather condescendingly reminds the

---

[21] *Id*. at p. 16.
[22] *Id*. at pp. 16–17.
[23] Rec. Doc. 20, p. 2.
[24] *Id*. (emphasis original).

65936

Court of the deferential standard of review owed to agency determinations.[25] The United States urges that "to accomplish this pre-filing settlement both Parties had to compromise."[26] Of course, compromise requires give and take and mutual concessions, but this Court is obliged to evaluate the concessions made by the United States in the light of the public's interest in fairness, adequacy, and reasonableness. In short, the Court views the proposed Settlement with reference to the real party before the Court; the public, whom the EPA and the Department of Justice serve.

## II.  LAW AND ANALYSIS

The Court must determine whether the Settlement is fair, adequate, reasonable, and in the public interest. The Court is not a "rubberstamp" for settlements under the CAA.[27] Where the suit "seeks to enforce a statute, the decree must be consistent with the public objectives sought to be attained by Congress."[28] One of the stated objectives of the civil penalties levied under the CAA is deterrence.[29] On its face, it is hard for this Court to fathom that a civil fine of $750,000 would accomplish the goal of deterrence. However, whether the proposed Settlement furthers the objective of deterrence is only one factor in the analysis of whether the proposed Settlement is fair, adequate and reasonable.

---

[25] See Id.
[26] Id. at p. 3.
[27] United States v. Blue Lake Power, LLC, No. 16-CV-00961-JD, 2017 WL 713145, at *4 (N.D. Cal. Feb. 23, 2017); Arizona v. City of Tuscon, 761 F.3d 1005, 1013 (9th Cir. 2014).
[28] U.S. v. City of Miami, Fla., 664 F.2d 435, 441 (5th Cir. 1981).
[29] UNITED STATES, et al.; Plaintiffs, v. DAIMLER AG, et al., Defendants. Additional Party Names: California Air Res. Bd., California Att'y Gen.'s Off., Mercedes-Benz USA, LLC, No. CV 20-2564 (EGS), 2021 WL 878894, at *6 (D.D.C. Mar. 9, 2021); United States v. Lehigh Cement Co. LLC, No. 5:19-CV-05688, 2020 WL 6799256, at *5 (E.D. Pa. Nov. 19, 2020); United States v. Harley Davidson, Inc., No. 16-CV-1687(EGS), 2020 WL 5518466, at *11 (D.D.C. Sept. 14, 2020); Tull v. United States, 481 U.S. 412, 422-23 (1987).

65936

### A. Fairness

Fairness is evaluated procedurally and substantively.[30] Procedural fairness requires a review of the negotiation process in terms of candor, openness, and bargaining balance.[31] The Court finds no evidentiary indication that the proposed Settlement was not reached by means of an arms-length, bargained-for, negotiated process.

The substantive fairness inquiry tests the proposed Settlement against the goals of corrective justice and accountability. A party should bear the cost of the harm for which it is legally responsible.[32] The United States argues that the proposed Settlement is substantively fair because Williams will be held accountable for its alleged non-compliance and will have to pay a substantial civil penalty that will provide a strong deterrent against similar future violations.[33] This Court does not conceive a $750,000 civil penalty as either substantial or likely to provide a strong deterrent effect. Although the Court is mindful that Williams is named a defendant in a sundry of civil lawsuits by citizens and employees, the question herein is the fairness, reasonableness, and adequacy of the penalty for the environmental harm.

The Court's observations and strong reservations regarding the deterrent effect of the proposed Settlement notwithstanding, applying controlling precedent, the Court will approve the Settlement.

The Fifth Circuit instructs:

> [T]he cardinal rule is that the settlement is fair, adequate and reasonable and is not the product of collusion between the parties. The court's

---

[30] *United States v. Hyundai Motor Co.*, 77 F. Supp. 3d 197, 199 (D.D.C. 2015); *United States v. Gateway Energy & Coke Co., LLC*, No. 13-0616-DRH, 2014 WL 11720089, at *2 (S.D. Ill. Nov. 7, 2014); *United States v. George A. Whiting Paper Co.*, 644 F.3d 368, 372 (7th Cir. 2011); *U.S. v. Telluride Co.*, 849 F. Supp. 1400, 1402 (D. Colo. 1994).
[31] *United States v. Cannons Eng'g Corp.*, 899 F.2d 79, 86 (1st Cir. 1990).
[32] *Id.* at 87.
[33] Rec. Doc. No. 14, p. 21.

65936

assessment of the fairness, adequacy and reasonableness of the proposal should focus on the terms of the settlement. In effect, the district court evaluates the terms of the compromise in relation to the likely benefits of a successful trial. Above all, the court must be mindful that inherent in compromise is a yielding of absolutes and an abandoning of highest hopes. In the absence of fraud or collusion, the trial court should be hesitant to substitute its own judgment for that of counsel.[34]

There is a presumption in favor of voluntary settlement. "That presumption is particularly strong where a consent decree has been negotiated by the Department of Justice on behalf of a federal administrative agency like EPA which enjoys substantial expertise in the environmental field."[35] In the context of the viability of a citizen's suit which followed a regulatory enforcement action that resulted in civil penalties, the Fifth Circuit observed that "[a] consent decree (approved by the U.S. Department of Justice) represents the federal government's discretionary resolution of the level of penalty needed [for environmental harms]. . . . The appropriate government agencies have exercised their discretion to extract some penalties from the [defendant] and forego others."[36]

The Settlement is substantively fair. The parties support entry of the Settlement.[37] The Government's expert attests that Williams has taken corrective actions to prevent a similar incident and remedy the deficiencies identified in the *Complaint*.[38] The EPA Risk Management Program Inspectors attest that the Settlement is fair, adequate, and reasonable, and attest that they weighed the statutory penalty factors.[39]

---

[34] *Ruiz v. McKaskle*, 724 F.2d 1149, 1152 (1984) (internal quotations and citations omitted).
[35] *United States v. Akzo Coatings of Am., Inc.*, 949 F.2d 1409, 1436 (6th Cir. 1991) (citing *Cannons*, 899 F.2d at 84).
[36] *Environmental Conservation Organization v. City of Dallas*, 529 F.3d 519, 531 (5th Cir. 2008).
[37] Rec. Docs. 2, 3, 25.
[38] See Rec. Doc. 14-1
[39] See Rec. Docs, 14-2, 14-3.

The Court is particularly persuaded by the fact that that the case also carries significant litigation risk. The factual disputes in this case are made more intractable by the destruction of the equipment and area involved. The Government asserts that the destruction of evidence would necessitate dueling experts, at great expense and delay. In light of the uncertainty of the litigation risk and the Government's affidavits, the Court finds that the proposed Settlement is substantively fair.

### B. Adequacy, Reasonableness, and Appropriateness

The Court must "must focus on the extent to which the decree is confined to the dispute between the parties and whether the decree adequately accomplishes its purported goal."[40] The Court may not "impose its own judgments . . . [but] [r]ather, the [C]ourt must determine whether the proposed consent decree is reasonable from an objective point of view."[41]

The Government asserts that it considered the EPA's statutory penalty factors in determining the penalty amount.[42] Consideration of these factors, in conjunction with the risk of protracted litigation, convinced the Government that the $750,000 penalty was adequate. There is insufficient evidence in the record to warrant disturbing the strong presumption that the Government negotiated an adequate settlement.

The non-compliant portions of the Plant were destroyed in the fire, and Williams spent eighteen months rebuilding the affected areas and implementing new protocols. The Government represents that "the affected components within the PPU were rebuilt, with extensive modifications being made to the Plant's design and safety systems,

---

[40] *United States v. Hyundai Motor Co.*, 77 F. Supp. 3d 197, 200 (D.D.C. 2015).
[41] *Id*.
[42] Rec. Doc. 14, pp. 23–28.

65936

operations protocol and training regimen…" The EPA's Risk Management Program Inspector attests that Williams has taken corrective actions to prevent a similar incident.[43] Therefore, there is no basis for injunctive relief, which supports the reasonableness and appropriateness of a solely monetary penalty.

Notwithstanding the Court's skepticism as to the deterrent effect of the $750,000 penalty, the Court finds that the Settlement is adequate, appropriate and reasonable.

### C. The Public Interest

The public interest is served by avoiding expensive and lengthy litigation which could decrease the net value of the penalty exacted from Williams and delay the payment thereof.

### IV. CONCLUSION

For the foregoing reasons, the Court finds that the Settlement is fair, adequate, reasonable, appropriate, and in the public interest. The *Motion to Approve a Stipulation of Settlement*[44] is therefore GRANTED.

**IT IS SO ORDERED.**

Signed in Baton Rouge, Louisiana on March 24, 2021.

*[signature]*
**CHIEF JUDGE SHELLY D. DICK
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**

---

[43] See Rec. Doc. No. 14-1.
[44] Rec. Doc. 3.

65936